**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | | |
|---|---|---|
| **IN RE** | ) | |
| | ) | **Case No. 15-01580-TLM** |
| **DANIELLE ELAINE OLSON,** | ) | |
| | ) | **Chapter 7** |
| **Debtor.** | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

## INTRODUCTION

In 2003, the Honorable Jim D. Pappas of this Court wrote an article outlining the issues that arise under the Bankruptcy Code, the Bankruptcy Rules and the Idaho Rules of Professional Conduct ("IRPC") when a lawyer agrees to "appear for" another lawyer at a § 341(a) meeting. *See* Hon. Jim D. Pappas, *Simple Solution = Big Problem*, 46 THE ADVOCATE 31 (Oct. 2003) (official publication of the Idaho State Bar) (discussing § 329(a), § 504, Rule 2016(b), and the IRPC).[1] Judge Pappas warned attorneys that requesting or agreeing to so appear could raise matters with serious consequences absent strict compliance with the Code, Rules and professional responsibilities.

A year later the Court, in *In re Peterson*, 2004 WL 1895201 (Bankr. D.

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and Rule references are to the Federal Rules of Bankruptcy Procedure. The IRPC are made applicable to attorneys before this Court through Local Bankruptcy Rule 9010.1(g).

Idaho Aug. 25, 2004), addressed a situation where a solo bankruptcy practitioner did not attend § 341(a) meetings in several of his chapter 13 cases, instead sending a different attorney from outside his firm in his stead and paying that second attorney. The Court held that the bankruptcy attorney violated his obligations under § 504, § 329(a) and Rule 2016(b), by sharing his fee with a lawyer outside the firm and then not disclosing the fee sharing relationship. It also held that the second attorney "once he agreed to represent these bankruptcy debtors in connection with their cases, was affirmatively obligated to file his own Rule 2016(b) statement in each case. [His] failure to file a proper Rule 2016(b) disclosure within fifteen[2] days of payment or agreement presents a problem independent of his and [the bankruptcy attorney's] violation of § 504." *Id.* at *3–*7.

*Peterson* was not the first time practitioners in this Court had been advised of the problems that could arise in connection with § 341(a) meetings. As noted in *Peterson*, the Court addressed such issues in *In re Castorena*, 270 B.R. 504, 529–31 (Bankr. D. Idaho 2001), and *In re Lish*, 04.4 I.B.C.R. 34, 35 (Bankr. D. Idaho 2004). *See also In re Dewaal*, 2002 WL 33939745 (Bankr. D. Idaho 2002). This Court is not alone. *See*, *e.g.*, *In re Ortiz*, 496 B.R. 144 (Bankr. S.D.N.Y. 2013); *In re Seare*, 493 B.R. 158 (Bankr. D. Nev. 2013); *In re Egwu*, 2012 WL 5193958 (Bankr. D. Md. Oct. 19, 2012); *In re Bernhardt*, 2012 WL 646150

---

[2] In 2009, Rule 2016(b) was amended to require such submissions within fourteen days.

(Bankr. D. Colo. Feb. 28, 2012); *In re Johnson*, 411 B.R. 296 (Bankr. E.D. La. 2008); *In re Bancroft*, 204 B.R. 548 (Bankr. C.D. Ill. 1997).

But the issues have not gone away.

**BACKGROUND**

In the present case, Eric Wayne Olsen ("Counsel"), is an Idaho licensed lawyer who lives in Salem, Oregon, and practices in the OlsenDaines firm. Counsel represented an Idaho resident, Danielle Olson, in her chapter 7 case. Ms. Olson's case was filed in November 2015.

At that time, however, Counsel's firm had no Idaho branch office, having closed it in March 2015.[3] Instead of traveling to Boise, Idaho to represent Ms. Olson, Counsel planned to and did retain an "appearance attorney" to attend the § 341(a) meeting. Counsel's Rule 2016(b) disclosure indicated that he received $1,100.00 to represent Ms. Olson, and he agreed to share his compensation with a person outside Counsel's firm, paying that individual, attorney Sarah Bratton, a "Flat Fee of $50.00 *for appearing* at debtor's 341(a) hearing *on my behalf*." Doc. No. 5 (emphasis added).

---

[3] The current website for the firm says the it does bankruptcy work in "Oregon, Washington and Idaho." It identifies offices in Albany, Bend, Coos Bay, Eugene, Grants Pass, Klamath Falls, Medford, Portland, Roseburg, Salem and Tigard, Oregon (which "all feature experienced bankruptcy lawyers who offer free consultation"), and offices in Spokane, Tacoma, Tri-Cities, Vancouver and Walla Walla, Washington. It identifies no Idaho office. Olsen Daines, under an "attorneys" heading, lists six partners and three associates. *See* http://www.olsendaines.com (last visited June 16, 2016). Of those listed lawyers, a review of the Idaho State bar website identifies only Counsel as being licensed to practice in Idaho. *See* http://isb.idaho.gov/licensing/attorney_roster.cfm (last visited June 16, 2016).

As will be discussed, Bratton was unable to attend the § 341(a) meeting. Counsel replaced her with attorney Kristoffer Sperry, an Idaho attorney who had been the sole member of OlsenDaines in Idaho until the Idaho branch closed.[4] Sperry, however, missed the meeting, leaving Ms. Olson unrepresented. At a later, continued § 341(a) meeting, Sperry appeared.

On March 30, 2016, the United States Trustee ("UST") and Counsel filed a stipulation under which Counsel agreed to refund $100.00 to Ms. Olson for his failure to appear at the initial § 341(a) meeting. Doc. No. 23. The UST proffered an order for the Court to enter approving the stipulation.

The Court declined to do so, and on April 14 set the matter for a hearing on May 9, and ordered Counsel to personally appear at that hearing. Doc. No. 24 ("Notice of Hearing and Order"). It also ordered Counsel to file on or before May 2 an itemization of services rendered by Counsel's firm to Ms. Olson, including descriptions of services, the individual who rendered them, such individual's qualifications, and the time expended. It also required an accounting of all billings to and payments received from Ms. Olson. *Id.*

Though he was served on April 14 with the Notice of Hearing and Order, Counsel neither timely nor completely complied.

On May 3, the day after the deadline, Counsel filed an amended Rule

---

[4] According to the Idaho State Bar website, *see supra* note 3, Sperry works with Howell & Vail, LLP in Meridian, Idaho.

2016(b) disclosure. Doc. No. 26. It was identical to his prior disclosure except that it identified Sperry, not Bratton, as the attorney agreeing to "appear" in return for a $50 payment from Counsel.

On May 4, Counsel filed an "affidavit" of fees. Doc. No. 29 ("Counsel's Affidavit"). It showed services rendered from October 14, 2014 through March 30, 2016. But it identified the individuals performing the services only by initial—not by name—and provided none of the information as to their qualifications, etc., required by the Notice of Hearing and Order.

After business hours on Thursday, May 5, Counsel filed a request to appear at the May 9 hearing by telephone and an appended affidavit asserting that "a personal appearance in Boise in this matter would be extraordinarily expensive." Doc. No. 31. This request, coming twenty-one days after the Notice of Hearing and Order was entered and served, and presented to the Court on the Friday before the Monday hearing, was denied. Doc. No. 32.

Ms. Olson appeared at the hearing on May 9, as did the chapter 7 trustee and counsel for the UST. Counsel did not appear. Shortly before hearing, the Court's clerk was informed by phone that Counsel's "staff" had mis-booked his flight for Tuesday, May 10. When Ms. Olson was advised, and even though she had taken time off from work without pay to attend the hearing, she agreed to return the following day when Counsel would be present. The trustee and UST also agreed, and the hearing was continued.

On May 10, Counsel tardily filed an affidavit of billings to and payments by Ms. Olson. This statement, Doc. No. 37, is not clear but indicates Ms. Olson paid a total of $1,100 in fees.[5] It also appears to reflect a payment back to Ms. Olson of $100.00 on February 18, 2016, and the comments at hearing indicated that Counsel had issued the $100.00 refund to her per his stipulation with the UST.

The hearing was held on May 10. Counsel and his local associated attorney, Sperry, addressed the Court. The trustee, counsel for the UST, and Ms. Olson also made comments. Following questioning and discussion, the matters were taken under advisement.

**ADDITIONAL DETAIL**

As noted, OlsenDaines once had a Boise, Idaho office, and attorney Sperry was an associate there. He left the firm in the spring of 2015. In Counsel's May 5 affidavit in support of his request for a telephone appearance, he states: "When Mr. Sperry left the OlsenDaines law firm, OlsenDaines made a decision to withdraw from practicing bankruptcy law in Idaho. OlsenDaines has filed its last chapter 7 bankruptcy case in Idaho.[6] We are in the process of turning over all current Chapter 13 cases and referring new calls to local Idaho counsel." Doc. No. 31 at 3.

Sperry, while still with OlsenDaines, was the attorney who first met with

---

[5] This is consistent with the total fee amount disclosed in Counsel's 2016(b) statement, Doc. No. 5.

[6] In 2016, seven chapter 7 cases were filed, with the last, Case No. 16-00568-JDP, being filed on April 29, 2016, just days before the May 5 affidavit and the May 10 hearing.

Ms. Olson in regard to her bankruptcy filing. Counsel's Affidavit reflects Sperry had a .20 hour telephone call and a .50 hour meeting with Ms. Olson on October 22, 2014, and a .50 hour "telephone appointment" with her on November 11, 2014.

Ms. Olson's case was filed a year later on November 30, 2015. Counsel's Affidavit shows activity in November 2015 during which the petition, schedules and statements were prepared and signed.[7]

Ms. Olson told the Court at hearing that after her initial meetings with Sperry, she was handed off to a series and variety of staff and paralegals. She felt neglected, unserved, and unimportant. She was unimpressed with most of the staff she dealt with. When Ms. Olson called Counsel's office with concerns about her case, she talked with a number of staff people though only one did a "good job" in Ms. Olson's view.[8]

Counsel's Affidavit does not establish what information was gathered from Ms. Olson or how, or how it was updated from whatever might have been

---

[7] Counsel's Affidavit fails to provide the detail required by the Notice of Hearing and Order. As the Court labored through the same at hearing to elicit pertinent details, it was informed by Sperry and Counsel that the date and time information was not necessarily accurate or complete, because the firm does bankruptcy work at a "flat rate" rather than on an hourly basis. According to Sperry, that any time entries appear in firm records is due to attorneys and staff making "contact notes" when dealing with a file, much as a collection agency might document its contacts with debtors for their internal records. Sperry noted that staff was more disciplined in making those contact notes than were the attorneys.

[8] Ms. Olson identified this employee as "Sherie" and Counsel's Affidavit itemizes services by a "SDC" which, at hearing, was identified as this individual. Counsel indicated Sherie was a paralegal. He also at hearing represented that all the firm's paralegals are trained by the firm or gained their experience through other similar work, and none are certified paralegals by reason of education or credentials.

conveyed to Sperry a year earlier. Counsel's Affidavit indicates the drafting of the petition, schedules and statements took only .50 hours and was performed solely by a paralegal.

There was no lawyer involvement until Ms. Olson was, in her terms, "forwarded to" Counsel's partner Rex Daines. She dealt with him by telephone, though that was "mostly by voice mail." Counsel's Affidavit reflects Daines had a telephonic "pre-signing appointment . . . to go over Petition/Schedules" with Ms. Olson lasting .50 hour on November 13, 2015, and another "meet[ing] with client to sign Petition/Schedules" of .50 hour on November 20. This latter "meeting," Counsel explained, would not have been in person but instead by internet video.[9]

Her only pre-filing contacts with attorneys were the initial meetings with Sperry in 2014, and the November 2015 telephone/video conversation with Daines.[10] Ms. Olson never met personally with Counsel.[11]

---

[9] The petition bears electronic signatures (*i.e.*, a "/s/" symbol) of Counsel and Ms. Olson dated November 20, 2015. The scanned .pdf images of the signature pages filed pursuant to this District's ECF procedures show both signatures and the November 20 date for each on a single page, though how both could physically sign and date the same page on the same day, since Ms. Olson was in Idaho and Counsel in Oregon, is not explained. The petition was not filed until November 30.

[10] Though this Decision deals with several issues, it does not address the adequacy of the time spent by attorneys in working with Ms. Olson. But given the limited time invested by licensed lawyers, the admonitions of the Bankruptcy Appellate Panel in *In re Nguyen*, 447 B.R. 268 (9th Cir. BAP 2011), are apropos. The Panel there considered a case where client interviews and gathering of financial and other information was solely conducted by non-attorney staff, and the attorney spent perhaps fifteen minutes conversing with a debtor and reviewing the draft. The bankruptcy court found the attorney to be insufficiently active in working with his clients and to have exhibited a cavalier attitude toward the accuracy of bankruptcy schedules. *Id.* at 273–74, 279–80. The bankruptcy court imposed a requirement that the attorney meet for at least an hour

(continued...)

**THE § 341(a) MEETINGS**

Ms. Olson's initial § 341(a) meeting was scheduled on January 7, 2016. As noted, Counsel's Rule 2016(b) disclosure indicated attorney Bratton would be paid a $50.00 "flat fee" from Counsel "for appearing at debtor's 341(a) hearing on my behalf."[12] Ms. Olson duly appeared, but no attorney was there. The trustee announced a continuation of the meeting to January 21.

Counsel explained that his firm was contacted at the last minute and advised Bratton could not appear, and it therefore made arrangements for Sperry to take her place.[13] Sperry said that, while he agreed to do so, he miscalendared the time of Ms. Olson's meeting. He arrived well after it had concluded and, in attempting

---

[10] (...continued)
with each of his prospective debtor clients. In rejecting the attorney's complaint that this was onerous, the Panel stated: "[T]he sanction was tailored to coerce [counsel] into spending time with clients to ascertain a full picture of their financial history, assure the client's awareness of the importance of correctly completing bankruptcy documents, and to assure that [counsel] has an adequate understanding of his clients' needs. . . . As for [counsel's] assertion that it is unduly burdensome to be required to spend a minimum of one hour with his clients, *we agree with the bankruptcy court that one hour is below the amount of time competent counsel generally spend with their clients. [Counsel] has chosen to be an attorney and must accept the duties and responsibilities associated with the position.*" *Id.* at 282–83 (emphasis added).

[11] Ms. Olson said her first contact with Counsel was when he tried to call her the night before the May 10 hearing—a late contact which Ms. Olson, under the circumstances, found offensive. The only prebankruptcy entry on the Affidavit for Counsel's own time was .40 hours on November 20, 2015 to "Review complete filing and authorize eFiling of petition. Sign." And, post-bankruptcy, Counsel had only a .25 hour phone call with Sperry on January 6, 2016, regarding the § 341(a) meeting.

[12] Bratton never filed any Rule 2016(b) disclosure regarding her agreement to represent Ms. Olson at the § 341(a) meeting or her agreed compensation.

[13] As noted, Counsel's Affidavit indicates he spent fifteen minutes on the phone with Sperry on January 6, 2016, the day before the meeting "to review case in preparation of 341(a) meeting."

to determine what happened by calling the firm's office in Oregon, he ended up missing a second § 341(a) meeting for Counsel that he had also agreed to "cover."[14]

The absence of an attorney had another impact beyond requiring Ms. Olson to return at her expense for a second § 341(a) meeting. After her case was called and continued, Ms. Olson was confronted by a creditor who berated her about a vehicle obligation. She had to cope with this individual on her own. She felt intimidated by the creditor, and abandoned and disregarded by Counsel. She was angry and distraught over what had occurred and, understandably, remains so.

Sperry appeared with Ms. Olson at the continued § 341(a) meeting on January 21, 2016. While Counsel on May 3 belatedly filed an amended Rule 2016(b) disclosure indicating his agreement to pay Sperry a flat fee of $50.00 for this appearance, on May 17 Counsel filed another amended Rule 2016(b) disclosure, indicating he actually paid Sperry $75.00. Sperry eventually filed his own required Rule 2016(b) disclosure in this case, confirming the $75.00 payment from OlsenDaines, Doc. No. 42, but that filing occurred two weeks after the May hearing.

Ms. Olson has received her discharge. Her case remains open because her trustee has issued a notice of assets and request for claims.

---

[14] That case was *In re Al-Sammak*, Case No. 15-01608-JDP. The UST and Counsel entered into a similar stipulation for refund of $100.00 in that case. That matter is before Bankruptcy Judge Pappas.

## DISCUSSION

The term "appearance counsel" was used in connection with Bratton and Sperry's role. Counsel's Rule 2016(b) disclosures indicate these other attorneys, for a "flat fee," agreed to "*appear*[ ] at debtor's 341(a) hearing *on my behalf*."

Despite Counsel's characterization, Bratton and Sperry were not simply agreeing to appear on Counsel's behalf. They were appearing, as counsel, *for Ms. Olson*. And they were not just "appearing"—they were *representing* her at a § 341(a) hearing *as her attorney*. Thus, a more apt phraseology than "appearance" counsel might be "substitute" or "associated" counsel. Even though this arrangement may be for a limited purpose or duration, the second attorney is, for that time and purpose, *the* attorney who is representing the client.

### A. Code, Rule and ethical violations

#### 1. Section 329 and Rule 2016(b)

Under § 329(a), any attorney representing a debtor in or in connection with a case shall file a statement of the compensation paid or agreed to be paid for the services rendered or to be rendered by that attorney and the source of the compensation. This provision is implemented by Rule 2016(b), which provides:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code, including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any

> agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Sperry was contacted, certainly by January 6 when Counsel telephoned him, if not earlier. He agreed to appear at Ms. Olson's January 7 meeting. He was obligated to file a Rule 2016(b) disclosure within 14 days of that agreement. He did not. Indeed, despite the colloquy about Rule 2016(b) disclosures at the May 10 hearing, it took him almost two more weeks to file the required disclosure.

In addition, Counsel reached an "appearance" and fee sharing agreement with Sperry by January 6, and Counsel was thus required by the Rule to disclose it within 14 days thereafter.[15] Counsel did not file a Rule 2016(b) disclosure of this agreement until May 3, after the Court had issued its Notice of Hearing and Order.[16]

Thus Counsel and Sperry have each violated § 329(a) and Rule 2016(b).[17]

---

[15] Counsel did disclose an agreement with Bratton in Doc. No. 5.

[16] And, though that May 3 disclosure is certified by Counsel as correctly reflecting the agreement, it was evidently in error given the May 17 disclosure of a $75.00 fee for Sperry.

[17] It also appears Bratton violated the Rule and Code in this case. Counsel's initial Rule 2016(b) disclosure reflected the agreement reached with Bratton to attend the § 341(a) meeting in return for payment by Counsel of $50.00. Bratton was obligated to file a Rule 2016(b) disclosure within 14 days of her agreement. She did not, and never has. Even though Bratton ultimately could not appear on January 7 and represent the debtor, the agreement alone required the filing of the Rule 2016(b) disclosure.

**2. Informed consent of the client**

A lawyer-client relationship is not merely contractual. The IRPC establish the parameters of the ethical and professional aspects of that relationship. As noted in the commentary to IRPC 1.0:

> Many of the Rules of Professional Conduct require the lawyer to obtain the informed consent of a client or other person . . . before accepting or continuing representation or pursuing a course of conduct. . . . The communication necessary to obtain such consent will vary according to the Rule involved and the circumstances giving rise to the need to obtain informed consent. The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives.

*Id.* at cmt. 6.

Nothing establishes Ms. Olson's informed consent to the use of "appearance" counsel (whether paid $50 or $75 or something else) to represent her at a § 341(a) meeting. Counsel argued at hearing that part of a standard "form agreement" with his firm's clients includes a disclosure that another attorney may appear at such meetings. There are, here, problems with that assertion. First, Counsel acknowledged that a search of his firm's records failed to find any such written form agreement with and executed by Ms. Olson. Second, he failed to establish just what such a form "discloses" or that it explains non-OlsenDaines lawyers may be so used. Third, he did not show that Ms. Olson provided informed

consent to the use of the specific lawyers (initially Bratton, who apparently had no connection or history with Ms. Olson, and later Sperry, who was no longer with the OlsenDaines firm) as her lawyer, counselor and advisor at the meeting.[18] And nothing shows that Bratton or Sperry sought or obtained Ms. Olson's informed consent to their acting as her attorney, or that these lawyers confirmed Counsel had previously so obtained that specific consent.[19]

As noted in the IRPC commentary, "Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence." *Id.* at cmt 7.

Counsel's anticipated use of a lawyer outside the firm to "cover" the § 341(a) meeting was also a limitation on (or at least a qualification of) the scope of Counsel's representation of Ms. Olson. *Castorena*, 270 B.R. at 530 (representation at § 341(a) meeting is part of the normal, ordinary and fundamental "core obligations" of counsel for debtors). Under IRPC 1.2(c), "A lawyer may limit the scope of the representation if the limitation is reasonable under the

---

[18] *See, e.g.*, *Egwu*, 2012 WL 5193958 at *4, n.16 ("Just how another attorney from a separate firm can be legitimately imposed upon a client without his express consent presents a real head scratcher[.]")

[19] Additionally, nothing presented at the hearing suggests that Bratton or Sperry were given, at the time they were asked to appear, specific information about Ms. Olson or her creditors, so that these attorneys could determine whether they could ethically represent her. It is unclear, for example, that the attorneys could do even basic conflict checks to see if their agreed representation of the debtor was proper.

circumstances and the client gives informed consent." The burden is on Counsel to show that a debtor, like Ms. Olson, "properly contracts away any of the fundamental and core obligations such an engagement necessarily imposes. Proving competent, intelligent, informed and knowing consent of the debtor" is required. *Castorena*, 270 B.R. at 530.

Moreover, the use of an attorney outside the firm implicates IRPC 1.5(e). That Rule provides that a division of a fee between lawyers who are not in the same firm may be made only if (1) the division is in proportion to the services each lawyer performs; (2) the client agrees to the arrangement *and* such agreement "is confirmed in writing;" and (3) the total fee is reasonable. Even assuming the first and third elements could be met, the second clearly is not.

Counsel and Sperry thus violated IRPC 1.2(c) and 1.5(e).

**3. Additional issues**

Counsel and Sperry addressed the Court on May 10. Those lawyers evinced an attitude that § 341(a) meetings are brief, uneventful, and of little consequence, thus justifying the use of "appearance counsel" who are paid *de minimis* fees. Even setting aside the inadequate disclosure and other issues addressed above, the view expressed is troublesome. It has been rejected in *Castorena* and *Peterson*, as well as in Judge Pappas' article, and by other courts around the country. And it certainly was not a view shared by Ms. Olson.

As already noted, the term "appearance" counsel is not apt; its use is an

error of comprehension as well as syntax. The adjective "appearance"—as used by Counsel and Sperry—effectively demeans the noun "counsel." Sperry did not just "appear" so that the presence of a lawyer at the § 341(a) meeting could be noted. He necessarily agreed to *represent Ms. Olson as her attorney*. That agreement invokes all his professional responsibilities, and the provisions, and weight, of the IRPC. *See, e.g.*, *"Covering" a Bankruptcy Proceeding for Another Attorney*, 99 Formal Ethics Opinion 12, 2000 WL 33300696 (N.C. St. Bar 2000) (concluding that when a lawyer appears with a debtor at a § 341(a) meeting, the lawyer is representing the debtor, with all of the ethical obligations such legal representation mandates, including the requirement that the attorney determine prior to accepting representation that there are no conflicts of interest; obtain the express consent of the client; and provide competent representation following adequate preparation even if a "limited" appearance).

IRPC 1.1 provides that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." While it may be accurate to say that many § 341(a) meetings are uneventful, that is not always the case. Trustees regularly use those meetings to flesh out facts and issues that have significant impact on a debtor's case, estate property, the validity of exemptions, and even matters that will affect a debtor's right to a discharge.[20]

---

[20] There have also been cases where testimony at § 341(a) meetings has been material to (continued...)

Creditors are adept at using the meetings to their advantage as well. That many, even most, meetings present or generate few problems is not a reason to denigrate the importance of competent representation by counsel for debtors, both in their preparation for and their appearance at such meetings.

Sperry had some awareness of Ms. Olson's situation a year before she actually filed bankruptcy. However, he was no longer a member of Counsel's firm. His preparation, according to the pre-hearing record, amounted to a fifteen minute phone call on January 6. He did not explain at hearing just how much time he spent in reviewing Ms. Olson's filings before heading to, but missing, her January 7 meeting. And, of course, he did not actually meet and confer with Ms. Olson that day.[21]

Sperry's statements at hearing, and his acceptance of a $75 "flat fee" for this work, reflects an attitude that § 341(a) meetings are unimportant and not deserving of the attention, care and application of thought, time and effort that other legal representation requires. Sperry's statements were in some ways expressly, and other ways tacitly, endorsed by Counsel

While the IRPC recognizes that not all engagements require the same level

---

[20] (...continued)
referral and criminal prosecution under 18 U.S.C. § 152.

[21] Sperry's belated Rule 2016(b) disclosure asserts he spent 2 hours preparing to represent Ms. Olson and met with Ms. Olson prior to her continued § 341(a) meeting. While of record, this disclosure was filed only after the Court emphasized at hearing the importance of such review and preparation. In many ways, the late filed disclosure is self-serving and, given its untimely filing, could not be addressed by parties at the hearing. It is weighed accordingly.

of attention and preparation, all representation nonetheless must be adequate and competently performed. *See* IRPC 1.1 at cmt. 5; *see also* IRPC 1.2 at cmt. 7 (noting that an agreement for "limited" representation does not exempt a lawyer from the duty to provide competent representation, but is a factor to be considered when determining the knowledge, skill, thoroughness and preparation reasonably necessary for the representation).

**B. Consequences for Code, Rule and ethical violations**

As set forth above, the violations by Counsel and Sperry of § 329(a), Rule 2016, and the requirements of the IRPC are several.[22] However, the Notice of Hearing and Order was issued due to the request that the Court enter an order approving the stipulation between Counsel and the UST to refund $100.00 to Ms. Olson. Nothing in the Notice of Hearing and Order warned Counsel or Sperry of other or further sanction. But the facts clearly warrant more than the $100 penalty.[23]

First, it appears clear that Counsel and Sperry failed in their duties to obtain knowing and informed consent from Ms. Olson, and to adequately and properly represent her as required by the IRPC. The Court will therefore transmit this Decision to Bar Counsel at the Idaho State Bar.

---

[22] While the Court here specifically addresses Sperry and Counsel, Bratton should also be aware of the potential violations of the Code and Rules and her professional responsibilities if she plans to continue to agree to "appear" at § 341(a) meetings or court hearings for another attorney.

[23] The stipulation's suggested $100 amount has already been repaid to Ms. Olson. The Court sees no reason not to enter that requested order.

Second, in this Circuit, a violation of § 329(a) and/or Rule 2016(b) requirements supports the total disallowance of all compensation. *In re Lewis*, 113 F.3d 1040, 1045–46 (9th Cir. 1997); *In re Park-Helena Corp.*, 63 F.3d 877, 881–82 (9th Cir. 1995); *Hale v. United States Trustee (In re Basham)*, 208 B.R. 926, 930–31 (9th Cir. BAP 1997). As noted by the Ninth Circuit Bankruptcy Appellate Panel, "The disclosure requirements imposed by § 329 are mandatory, not permissive, and an attorney who fails to comply with the disclosure requirements forfeits any right to receive compensation." *Id.* (citing *In re Crayton*, 192 B.R. 970, 981 (9th Cir. BAP 1996)).

Given Counsel's approach to his representation of Ms. Olson and the consequences such decisions have had on her as a debtor, the Court concludes total disgorgement is appropriate. Thus, the Court intends to order Counsel to disgorge his entire compensation and return, in addition to the $100.00 already refunded, the remaining $1,000 to Ms. Olson.[24] This order will be based on Counsel's violations of § 329(a) and Rule 2016(b), and upon the above case law, and on this Court's authority under § 329(b), Rule 2017 and its inherent powers.

However, despite the fact that the Ninth Circuit case law regarding § 329(a) and Rule 2016(b) is clear, and attorneys are on notice of the same, this Court did not provide specific notice to Counsel of possible sanctions when it issued the

---

[24] Clearly Sperry also violated § 329(a) and Rule 2016(b), however, § 329(b) dictates that fees found excessive are to be returned to the entity that made the payment. Here, the Court sees little utility to ordering Sperry to return $75.00 to OlsenDaines.

Notice of Hearing and Order. Thus, through this Decision and a subsequent notice, the Court will provide Counsel seven days to request a hearing on the subject if he desires to provide any additional information or argument. If no hearing is requested, the Court will enter the order requiring the disgorgement of the identified fees.

**CONCLUSION**

The bankruptcy system relies on the work of dedicated professionals. Such professionals include lawyers who are solo practitioners or who work in small firms. The simple fact of life is that, at some point, a lawyer will find that personal events and circumstances, or professional conflicts, will make it impossible to attend a scheduled hearing or a § 341(a) meeting. Seeking a continuance or rescheduling is not always possible or desirable. The Court is not insensitive to this reality.

However, if an attorney chooses to arrange for another attorney to represent the client, whether it's a § 341(a) meeting or a court hearing, several steps must be taken in order to satisfy both attorneys' ethical and professional obligations. The circumstances that occasionally arise necessitating substitute counsel can be accommodated without compromising those professional standards.

The Court believes the vast majority of attorneys take seriously their professional and ethical obligations. The rights of, and risks to, clients demand no less. Here, that did not occur, and insufficient attention to those obligations was

given by the attorneys involved.

Based on the foregoing, the stipulation between Counsel and the UST to refund $100.00 to Ms. Olson will be approved. A copy of this Decision will be forward to the Idaho State Bar. And, if Counsel does not request a hearing within seven days, the Court will enter an order requiring Counsel to disgorge the remaining $1,000.00 to Ms. Olson.

DATED: June 16, 2016

UNITED STATES COURTS DISTRICT OF IDAHO

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE